[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 456 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 457 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 458 
The claim of the defendants and appellants to recoup, from the rent due to the plaintiffs, damages for their not having within a reasonable time put in an efficient steam hoisting apparatus for the demised premises, is the only matter now in dispute between the parties. The claim of the plaintiffs for additional rent, consisting of a percentage upon the cost of such apparatus during the delay, has been disposed of by the decision of the General Term of the Superior Court, from which no appeal is taken in this respect. The defendant's claim for damages, for the delay in putting in the apparatus, rests upon the following facts: *Page 459 
In November, 1867, the plaintiffs entered into an agreement in writing with one Asa D. Dickinson, whereby they agreed to demise to him the stores Nos. 87 and 89 Leonard street, in the city of New York, for the term of three years from the first of February, 1868, at the rent of $26,000 per annum, and to enter into a lease accordingly; and Dickinson agreed to take the premises and enter into such lease himself, with or without partners, or to procure some responsible firm to execute the lease as lessees. It was further agreed, in the same instrument, that in case the lessees should so desire, the plaintiffs would put in an efficient steam-hoisting apparatus in and for the said premises, and that in case the same should be put in, the lessees should pay for the use thereof twelve per cent per annum on the cost of the same.
This is the fundamental agreement upon which all the subsequent transactions of the parties were predicated. It did not designate in what part of the premises the steam hoisting apparatus was to be placed, neither did it provide for or seem to contemplate the occupation by different tenants of separate portions of the demised premises. The agreement was to demise the whole premises to one tenant, or to such parties as he should offer in his own place and stead. All that is contained in the agreement with reference to the steam apparatus has been in substance recited.
The first inquiry in order naturally is, what obligation did this agreement impose upon the landlord, with reference to the location of the steam apparatus. To ascertain this, it is necessary to look at the manner in which the building with reference to which the agreement was made, was constructed.
The building appears to have constituted one store, although described by two street numbers and covering two lots. It was situated on Leonard street, west of Broadway. There was but one passage or stairway from the street to the lofts over the first or ground floor. This was on the side of the building nearest to Broadway — the easterly side. In front of this stairway was the ordinary hand hoisting apparatus, extending through the several floors above, but not breaking *Page 460 
the ground floor so as to impede passage from the street to the stairway. The agreement with Dickinson was not to construct a new hoistway, but to put in a steam hoisting apparatus; neither did it contain any provision for a new entrance to the lofts. The existing hoistway was apparently the natural place for the steam apparatus; and I can find in the original agreement no obligation to furnish a separate entrance from the street to the lofts. This, probably, was rendered necessary by the separate occupation of the premises by different tenants, but was not deemed essential if all of the premises were occupied by the same tenant.
In December, 1867, Dickinson, underlet to the defendants all of the premises above the first floor, at the yearly rent of $13,000, and gave to the defendants the benefit of the stipulation in relation to the hoisting apparatus, and the defendants assumed to pay the rent therefor to the plaintiffs. Subsequently, Dickinson leased to Amidown, Lane Co. the first floor, with the basement and sub-cellar, and reserved no right to use any part of the premises for a new entrance to the lofts.
About the 1st of February, 1868, the defendants gave notice to the plaintiffs that they desired the plaintiffs to put in a steam hoisting apparatus, and the plaintiffs proceeded to do so, placing it in the entrance where the hand hoistway was. The defendants claimed that the erection of the apparatus in that place would be inconvenient and injurious to their business, and that a new and separate entrance and stairway should be provided for them through the premises which had been let to Amidown, Lane Co.; and they obtained an injunction restraining the plaintiffs from proceeding with the erection of the apparatus.
On the 19th of March, 1868, the plaintiffs and defendants entered into an agreement, reciting that it was injurious and inconvenient to the business of the defendants that the work of erecting the steam hoistway in the entrance should be discontinued until a new stairway and entrance should be provided, and the defendants agreed that if the said steam hoistway *Page 461 
should be completed and a new entrance made within a reasonable time, they would consider the work of completing the steam hoistway as completed from and after the 23d of March, 1868, so far as relates to the covenant to pay for the use of the same at twelve per cent per annum.
The referee finds that the plaintiffs never undertook or agreed that a new entrance and stairway should be made. They were interested in completing the steam apparatus, so that they might draw the stipulated rental for its use. The defendants were objecting to the apparatus being put in the entrance-way. To prevent this being done, before a new entrance was provided, they entered into the agreement of March nineteenth, whereby they agreed that if the hoistway should be completed and a new entrance made within a reasonable time, they would consider the work of completing the steam hoistway as completed from and after the twenty-third of March, so far as related to the payment of the twelve per cent. The object of this agreement appears to have been simply to fix a time for which the twelve per cent should run, and prevent the delay in obtaining a new entrance from postponing the period at which this rental should begin. But it did not impose upon the plaintiffs any further obligation in respect to the construction of the hoisting apparatus than was created by the original agreement with Dickinson. That agreement, we think, contemplated that the apparatus should be placed in the existing hoistway. The referee has found that the plaintiffs, in all things, performed and fulfilled the conditions of the agreement in reference to the putting in of the hoistway except only as prevented therefrom by the defendants. They insisted that it should not be put in until a new entrance and stairway should be completed and ready for use. This was a new condition imposed by them, and the referee finds that it was no part of any of the agreements between the parties. For the delay occasioned by this demand on the part of the defendants, we do not think the plaintiffs were liable in damages. The only consequence of the failure to make a new entrance within a reasonable time *Page 462 
was to deprive the plaintiffs of the benefit of the agreement that the additional rental should be computed from the twenty-third of March.
The judgment should be affirmed with costs.
All concur.
Judgment affirmed.